HAZELTON–MOFFIT SPECIAL SCHOOL DISTRICT NO. 6, EMMONS COUNTY, North Dakota, Petitioner and Respondent,

v.

M. D. WARD, Benejah Orthmeyer, Raymond Humann, Mrs. Meade Ward, and Ervin Grossman, individually and as officers or members of the School Board of former Liberty School District No. 32, Emmons County, North Dakota, Respondents,

M. D. Ward and Mrs. Meade Ward, Respondents and Appellants.

HAZELTON–MOFFIT SPECIAL SCHOOL DISTRICT NO. 6, EMMONS COUNTY, North Dakota, Petitioner and Respondent,

v.

William ROOKER, Leo Bitz, Harvey Soule, Mrs. Floyd Bitz, and Mrs. William Rooker, individually and as officers or members of the School Board of former Buchanan School District No. 16, Emmons County, North Dakota, Respondents and Appellants.

Nos. 7906, 7907.

Supreme Court of North Dakota.

Feb. 6, 1961.

William R. Mills, Bismarck, for respondents and appellants.

Conmy, Donahue & Conmy, Bismarck, for petitioner and respondent.

TEIGEN, Judge.

Hazelton-Moffit Special School District No. 6 is the petitioner. It filed two petitions against the board members and officers of two former school districts praying for a writ of mandamus to compel the respondents individually and as such board members and officers of the former school districts to pay over and release to the petitioner all properties and assets in their hands belonging to the former districts. The petitions in brief alleged that the petitioner is a corporation organized and existing under and by virtue of the laws of the State of North Dakota; that the respondents were officers or board members of the former school districts but that such school districts had ceased to exist; that in a reorganization of school districts conducted pursuant to the provisions of Chapter 15–53 of the 1957 Supplement to NDRC 1943, all of the area formerly included in the said former school districts named was incorporated into the petitioner district as an integral part thereof; that the said former school districts thereupon terminated as legal entities; and that the time for appeal had expired. Pursuant to the statutes and the adjustment of property, assets, debts and liabilities, all of the property and assets of said former school districts became the property and assets of the petitioner. Demand had been made upon the respondents for delivery thereof but they have refused and still refuse to pay over or release the same. Petitioner prayed for a peremptory writ of mandamus to compel respondents in each of said cases to turn over to it the property and assets of their respective former school districts.

The respondents in each of said cases filed similar answers. In one of the cases, however, three of the respondents filed with the court an offer of judgment which was accepted by the petitioner and the court. The record does not disclose what offices these three respondents held, but we assume they did not constitute a majority of the school board or those who had actual possession of the property in question as the proceeding continued to be resisted. Thus the two respondents in the one case, and all of the respondents in the other case, filed answers in each of the proceedings. The answers are identical. In these answers the respondents deny that the petitioner is now or at any time has been a corporation; deny that the former school districts had ceased to exist as corporations, and deny that the reorganization of

the school districts was duly conducted under the provisions of Chapter 15–53, supra. They further deny that the former school districts were incorporated into the petitioner district or that the former school districts terminated as legal entities. They deny that the time for appeal from the proceedings had expired, and deny that the assets and property in the hands of the respondents is the property of the petitioner district. The respondents admit that a demand had been made, but allege that they believe the same to be invalid and of no effect.

The respondents affirmatively plead that the reorganized district had not been properly formed. In designating the matters which they claim rendered the district invalid, they aver that the county committee, purporting to perform pursuant to statute, was not a duly constituted county committee and was therefore illegal. They averred that the polling places were not in proper places; that certain petitions had been filed with the county committee which had been disregarded; that the second election held for the formation of the new school district was invalid because it was not preceded by another public hearing, and that in the notice of election there was an omission in the boundary description. The respondents allege that the county superintendent of schools did not have the statutory educational requirements for the office; that the proposed boundary was gerrymandered to include a certain schoolhouse, thus depriving another district of it; that the votes of one district included within the proposed reorganized district were misclassified as rural. They further contend that the petitioner in performing acts as a school district was doing so in an illegal manner in that it was obtaining money in the form of loans without calling for bids; that if the said former districts no longer exist, respondents, as board members and officers, had no authority to transfer property; that Section 15–5316 1957 Supplement to NDRC 1943, one of the statutes in the reorganization

act, is unconstitutional in that it denies the respondents the right of appeal provided by Section 15–5325 of said supplement.

The facts were stipulated and the matter submitted to the district court for decision without a jury on the basis of the described pleadings and the agreed facts. The stipulation also provided that the two cases be consolidated for the purpose of the trial.

█ The district court found in favor of the petitioner in each case, and ordered judgment entered for a peremptory writ of mandamus. The respondents have appealed to this court from such judgments. The cases are before us for trial de novo, as provided by Sections 32–3206 and 28–2732 NDRC 1943 providing that the chapters relative to new trials and appeals in the title Judicial Procedure, Civil, except insofar as they are inconsistent with the provisions of the chapter on mandamus, shall apply. We find no inconsistency between Chapter 32–34 NDRC 1943, providing for the special proceeding of mandamus, and Section 28–2732 NDRC 1943, pertaining to appeals of actions tried to the court without a jury.

The defenses interposed by the answer may be divided into four main categories: (1) Denial; (2) An attack upon the legality of the county committee and the county superintendent of schools, who were officers instrumental in the formation of the reorganized district; (3) An attack upon the legality of the formation of the petitioner district; and (4) An attack upon the constitutionality of one statute of the reorganization act.

The facts were stipulated mainly in the form of exhibits admitted in evidence, which exhibits consist of all of the minutes of the county committee, the entire record of both the first and second reorganization plan, including the action of the county committee, action of the state committees, and action of the county superintendents. They contain all the records of public hearings, notices of election, election ballot, the canvass of the votes, the record on can-

vass of the votes, the certification of the formation and establishment of the district, notice and call by county superintendent of special election to elect a new board of education, certification of the election of the school board members, the orders of the county committee directed to the officers of the former school districts incorporated within the petitioner district pertaining to the division and adjustment of property, debts and liabilities and ordering the transfer thereof to the petitioner district, and demand for authorization authorizing the county treasurer to transfer to the petitioner district its share of the remaining funds of the former districts in possession of the county treasurer, copies of the notification by county superintendent of establishment and organization of petitioner district to the president and clerk of all former districts within the area of the petitioner district, and other papers. It was stipulated that these orders and notices were received.

It was further stipulated that the petitioner is engaging and paying teachers who are teaching in the schoolhouses in the petitioner district; that the respondents in each of these cases have in their possession properties of "alleged existing school districts," to wit, Buchanan and Liberty; and that said Buchanan and Liberty districts have not, since July 1, 1959, engaged any teachers or provided educational facilities except as follows: "The respondents have not resisted teachers teaching in the schoolhouses but have resisted the removal of any desks or equipment."

In support of the allegations of the respondents' answer, it was also stipulated that there was no public hearing prior to the second or new election; that Moffit, located within Moffit Township, is unincorporated and that its residents voted under the rural classification; that the respondents are taxpayers and voters within the boundaries of the petitioner district; that the county superintendent of schools does not possess all of the educational requirements provided by statute for that office;

that in the second or new election there was no polling place established in portions of two school districts, but that the polling place for the citizens of those two districts or portions thereof was located outside thereof but within boundaries of the petitioner district; that there was an omission, in the notice of the second or new election, in the boundary description, but no evidence that anyone was misled; that certain schoolhouses in Gayton Township were located in certain sections; that certain petitions were filed with the county committee and were not by the county committee filed with the state committee; that there are no separate written appointments of the county committeemen; that since 1951 there have been no appointments to the county committee by the state committee, and that the county superintendent of schools appointed three of the members of the county committee who acted thereon as such county committee members during the reorganization in question.

The petitioner, in his arguments to the district court and also to this court, urges that the respondents are attempting collaterally to attack the legal existence of the petitioner district and that this question can be determined only by a direct proceeding in the nature of quo warranto.

■ An examination of the exhibits admitted in evidence and the stipulation of facts discloses that the respondents have admitted all of the material averments of fact of the petition. A reorganization of the school districts involved was in fact established and declared pursuant to the provisions of Chapter 15-53 of the 1957 Supplement to NDRC 1943, entitled "Act to provide for the reorganization of school districts." A special election followed called by the county superintendent of schools at which the officers were elected, and such reorganized district was in fact operating as a special school district prior to the commencement of this action. The statute to provide for the reorganization of school districts cited above has withstood chal-

lenges to its constitutionality in two previous cases decided by this court, to wit, State ex rel. Kjelden v. Horne, N.D., 98 N.W.2d 150, and Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542. The evidence establishes that the steps in the formation were carried out under the Act in good faith, and there was at least a colorable compliance of the Act, an election which carried, followed by establishment and organization of petitioner district by county superintendent and a user in good faith of the governmental powers incidental thereto. This was well established by the evidence. The respondents' denial of the petitioner's material averments of fact were overcome.

The second category of the respondents' answer attacks the legality of the county committee and the legality of the county superintendent of schools. They attack the legality of the county committee on the ground that certain members thereof who acted with the remaining members of the committee on the reorganization plan in question were not legally selected for their positions for the reason that they were appointed thereto by the county superintendent of schools who, it is argued, had no right to make such appointment for the reason that a vacancy did not exist, it being the contention of the appellants that the expiration of a term of a county committeeman did not create a vacancy as contemplated by Subsection 4 of Section 15–5313 of the 1957 Supplement to NDRC 1943. Section 15–53–13 NDCC. The right of the county superintendent of schools elected to hold office is attacked on the ground that he did not possess the educational requirements; he did not possess a first grade professional certificate with a major or minor in education, as provided by Section 15–2202 1957 Supplement to NDRC 1943. Section 15–22–02 NDCC. The facts of the challenge are admitted in the stipulation. However, it is clearly established by the evidence that the county committee, including the county committeemen whose right to office is challenged, and the county super-

intendent of schools, did in fact carry out the respective duties of their offices as provided in the reorganization of school districts Act. These officers are not parties to this action. It is admitted they exercised the functions of public office, were in possession thereof, and discharged their duties under color of authority. They were at least de facto officers. Wolfgram v. Hall, 79 N.D. 138, 54 N.W.2d 896; 43 Am. Jur., Public Officers, Sec. 471; 62 C.J.S. Municipal Corporations § 493; 81 C.J.S. States § 100; 67 C.J.S. Officers § 135.

As de facto officers, under the wise provisions of the law every act done in the capacity of the office was valid and effective. State ex rel. Sathre v. Moodie, 65 N.D. 340, 258 N.W. 558; State ex rel. Sathre v. Byrne, 65 N.D. 283, 258 N.W. 121; State ex rel. Butler v. Callahan, 4 N.D. 481, 61 N.W. 1025; State ex rel. Bockmeier v. Ely, 16 N.D. 569, 113 N.W. 711, 14 L.R.A., N.S., 638.

As such they were clothed with all the rights and powers that they would have enjoyed as a de jure officer possessed of every qualification. See State ex rel. Sathre v. Moodie, supra; State ex rel. Bockmeier v. Ely, supra.

For these reasons there can be no attack now on these proceedings, which are completed, on such grounds.

The third category of respondents' (appellants') attack goes to matters of formation and is intended as an attack upon the legality of the petitioner district. The petitioner objected on the ground that it constituted a collateral attack.

This category includes the affirmative charges made in the answer, alleging (1) the polling places were not in proper places, (2) certain petitions have been filed with the county committee which were disregarded, (3) the second election was not preceded by a second public hearing, (4) error in the notice of election, (5) the boundary line was gerrymandered, and (6) error in classification of votes, rural and urban.

These matters are charged to be irregularities and go directly to the legality of the district, or, in other words, it is an attempt at a direct challenge to the legality of the district. If the petitioner district is a void district, then the old districts of which the respondents were officers and school board members would be the legal districts.

We are first confronted with a procedural question. This is a special proceeding in mandamus, brought by the new district against the officers and school board members of the old districts. The purpose is to compel the officers and school board members of the old districts to deliver up to the new district certain properties held by them by virtue of the offices which they had held.

The respondents argue that the language of the petition opens the issue of ultimate legality when it is pleaded as follows:

"That in a reorganization of school districts duly conducted under the provisions of Chapter 15–53 Supp.N.D. R.C.1943, all or part of the area formerly included in the former * * * (school district) was incorporated into the said Hazelton-Moffit Special School District #6 * * * as an integral part thereof and * * * (said school district) thereupon terminated as a legal entity being fully incorporated into other districts; * * *."

The respondents argue that when the petitioner alleged that the reorganization was "duly conducted," the petitioner injected into the proceeding the question of the legality of formation. Therefore, in addition to a denial, the respondents pleaded affirmatively by answer the various reasons set forth above in defense of the averment of the petition.

■ We do not feel that the language of the petition set forth above adds anything to the issues of the proceeding. The petitioner averred in the first paragraph of its petition that it was a corporation organized and existing under and by virtue of the laws of the State of North Dakota.

When it later averred "that in a reorganization of school districts duly conducted under provisions of Chapter 15–53," and so forth, it did not add to the averment earlier made. The words "duly conducted" import but a conclusion. The word "duly" in a complaint is generally a conclusion of law. Stott v. City of Chicago, 205 Ill. 281, 68 N.E. 736; Hanson v. Langan, City Ct., 9 N.Y.S. 625; Miles v. McDermott, 31 Cal. 270; Woodson Mill & Elevator Co. v. Graham Mill & Elevator Co., Tex.Civ.App., 57 S.W.2d 943; General Talking Pictures Corporation v. Hyatt, 114 Utah 362, 199 P.2d 147.

Thus the words of the petition singled out by the respondents do not broaden the issues raised to permit in a mandamus proceeding a direct challenge to the legality of the formation of the corporation bringing these proceedings.

■ The respondents also argue that under the new rules of civil procedure adopted by this court, the practice is intended to be broadened to avoid the multiplicity of suits and that although the new rules do not apply to mandamus, they do emphasize the desirability of avoiding multiple litigation. What was said is true and we agree. However, when a statutory proceeding is specifically excepted from the rules insofar as they are inconsistent or in conflict with the procedure and practice provided by the rules, we are bound by the provisions of the statute. See Rule 81 and Table A, N.D.R.Civ.P.

This brings us to the question of whether or not in a mandamus proceeding such as this the respondents can by answer assail the legality of formation of the petitioner corporation.

■ The validity of the organization and corporate existence of a municipal corporation which is not a nullity or void ab initio may be questioned only in a direct proceeding. 62 C.J.S. Municipal Corporations § 32; 37 Am.Jur., Municipal Corporations, Section 13.

We stated earlier that we have a statute providing for the reorganization of school districts and that it has been held to be constitutional; also that there had been at least colorable compliance with the act, an election which carried, followed by the establishment, organization and user in good faith of the governmental powers incidental thereto. In Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542, we found that Sections 148 and 151 of our Constitution delegate to the legislature the power to establish a general system of education and that the act to provide for the reorganization of school districts comes within that power. We also held that the act is a general law and not violative of the constitutional inhibition against the delegation of legislative powers to administrative officers.

■ Further examining the act we find the duties of the county superintendent of schools are clearly spelled out. It provides when the election has carried, the county superintendent "shall organize and establish such districts." Section 15-5314 1957 Supplement to NDRC 1943; Section 15-53-14 NDCC. It also provides that the county superintendent, "after the establishment of any new school district," NDRC Supp. 15-5318, shall call a special election at which school board members shall be elected if they are not elected at a regular election. Thus it is clear the legislative act of establishing a new school district is complete when the county superintendent acts administratively to establish it, and such establishment is followed by the election of its officers. The new corporation is then established and organized. It has come into existence. These final steps of creation are carried out by the county superintendent and when completed by him, the administrative acts so performed give life to and establish the legal entity of the newly created district. 62 C.J.S. Municipal Corporations § 28; 37 Am.Jur., Municipal Corporations, Section 8.

■ The county superintendent having found that the election carried, acted thereon by taking the necessary steps to establish and organize the district, and we hold that the question as to the various steps in the formation preliminary thereto are not open to judicial investigation on a mandamus proceeding to compel the officers and former school board members to deliver over to the new district the properties of the old district held by them.

■ The county superintendent is a public official established by our constitution. As a public officer he is presumed to have performed his duties regularly. Section 31-11-03, subd. 15 NDCC; Schell v. Collis, N.D., 83 N.W.2d 422; Ferch v. Housing Authority of Cass County, 79 N.D. 764, 59 N.W.2d 849; Coulter v. Ramberg, 79 N.D. 208, 55 N.W.2d 516; Chester v. Einarson, 76 N.D. 205, 34 N.W.2d 418, rehearing denied 76 N.D. 205, 35 N.W.2d 137; Belt v. Belt, 75 N.D. 723, 32 N.W.2d 674; Hackney v. Elliott, 23 N.D. 373, 137 N.W. 433; Pine Tree Lumber Co. v. City of Fargo, 12 N.D. 360, 96 N.W. 357; Fisher v. Betts, 12 N.D. 197, 96 N.W. 132; Hannah v. Chase, 4 N.D. 351, 61 N.W. 18, 50 Am.St.Rep. 656.

This clothes the new district with prima facie legal existence and an attempt to attack the steps of formation prior to its establishment becomes collateral and cannot be permitted in a mandamus proceeding.

■ This is a special proceeding in mandamus. The clear legal right of the petitioner to mandamus has been established. To permit inquiry into the ultimate legality is beyond the scope of inquiry permitted in mandamus. This is the purpose of quo warranto or an action in the nature of quo warranto. Chapter 32-13 NDCC; Weiderholt v. Lisbon Special School District, 41 N.D. 146, 169 N.W. 809; State ex rel. Mayo v. Thursby-Butte Special School District, 45 N.D. 555, 178 N.W. 787.

■ Quo warranto or an action in the nature of quo warranto is an action. Section 32-13-01 NDCC; 74 C.J.S. Quo

Warranto § 2. Mandamus is a special proceeding. Section 32–32–01 NDCC; State ex rel. Chamberlain v. Johnstone, 65 N.D. 727, 262 N.W. 193; State ex rel. Bickford v. Fabrick, 16 N.D. 94, 112 N.W. 74. The statutes do not contemplate that a special proceeding of this character can be made the appropriate remedy to determine questions that are properly the subject of an action. State ex rel. Mayo v. Thursby-Butte Special School District, supra; 55 C.J.S. Mandamus § 5.

▮ The averments of the answer pleaded affirmatively could, if it were a proper case, be construed to be a counterclaim in the nature of quo warranto, but our statutes on mandamus do not provide for a counterclaim (Section 32–34–05 NDCC), and generally when the only pleadings allowed in mandamus are the alternative writ and the answer or return, set-offs and counterclaims are not permissible. 55 C.J.S. Mandamus § 281.

A special proceeding is defined in Section 32–01–04 NDCC as any remedy other than an action. It includes mandamus, Section 32–32–01 NDCC, State ex rel. Bickford v. Fabrick, 16 N.D. 94, 112 N.W. 74. An action is an "ordinary proceeding," Section 32–01–02 NDCC. In Dow v. Lillie, 26 N.D. 512, 144 N.W. 1082, L.R.A. 1915D 754, this court said by the terms as used in our statutes an "ordinary proceeding" is one known to the common law, and formerly conducted according to the proceedings of the common-law courts, while a "special proceeding" is a remedy of statutory origin.

▮ Special proceedings in code states ordinarily embrace all civil remedies which are not ordinary actions. 1 Am.Jur., Actions, Section 4; 1 C.J.S. Actions § 1h (b–7).

▮ A special proceeding is an independent remedy which cannot be taken by action. Allen v. Partlow, 3 S.C. 417.

The importance of observing essential distinctions between special proceedings and civil actions is that the remedial rights incident to the action which its nature and character demand may properly be applied. Gwinn v. Melvin, 9 Idaho 202, 72 P. 961.

These distinctions we feel our court had in mind in State ex rel. Mayo v. Thursby-Butte Special School District, supra, when it said, "apparently the Code of Civil Procedure does not contemplate that a special proceeding of this character can be made the appropriate remedy to determine questions that are properly the subject of a civil action," [45 N.D. 555, 178 N.W. 789] and when it adopted the North Dakota Rules of Civil Procedure where special proceedings were excepted from the new rules of civil procedure.

For the reasons aforesaid we cannot consider in this proceeding the averments of the answer that attempt to challenge the legality of the formation of the district. A civil action is made available in the nature of quo warranto for that purpose.

The act providing for the reorganization of school districts provides the county superintendent shall make the proper adjustment or property, assets, debts and liabilities, as provided in the approved plan. Section 15–53–14 NDCC. The respondents have not appealed on the question of adjustment of property, debts and liabilities among the districts involved, and the time therefor had passed before the commencement of these proceedings. Section 15–53–25 NDCC. That question is settled. The county superintendent issued orders pursuant to the adjustment and it is stipulated that these orders were received by the respondents. These orders direct the respondents to deliver to the petitioner the properties and assets made the subject matter of these proceedings. It is therefore the plain duty of the respondents to turn over to the petitioner all property and assets of the former districts described in the orders and in their possession or control. They have no discretion in the mat-

ter; theirs is but a ministerial duty. The claim of the respondents that the petitioner district does not have de jure existence cannot be litigated in this proceeding. It is well established it has a prima facie legal existence, no attempt was made by certiorari to challenge the jurisdiction of the county superintendent in establishing and organizing the district, and no action has been commenced in quo warranto to challenge the legality thereof. Having held that this challenge cannot be adjudicated in this proceeding, the petitioner has the clear, legal right to the relief prayed for.

 In the third and last category of defenses advanced in the respondents' answers, attempt is made to challenge the constitutionality of a portion of the Act, and cited in particular is Section 15–5316 1957 Supplement to NDRC 1943. However, there is no statement contained in the pleadings, in the briefs, or in the argument before this court citing any specific sections of the constitution as having been violated. It is stated in a general way that the above cited section is arbitrary and capricious and deprives the respondents of property without due process of law; that it denies the right of appeal provided by Section 15–5325, and that it provides taxation without representation. No facts have been introduced in evidence in support of the claims made, and the oral arguments in support thereof were premised upon a hypothetical set of facts. The lower court did not pass upon the constitutional question, and an examination of counsel's brief for respondents submitted in the lower court contains no argument on the constitutional question.

We therefore, are confronted with a situation where no specific sections of the constitution are pointed out as having been violated, nor does it appear that the question was litigated in the court below and that the argument made before this court is based on a hypothetical situation. We do not feel that any constitutional question is properly before us.

As a general rule the constitutionality of a statute cannot be first raised on appeal in a civil proceeding, and a court will not pass upon a constitutional question, except when such question is properly before it and necessarily involved. The court should not of its own volition go outside of the record and search for reasons for annulling a statute, nor should they conjure up theories to overturn and overthrow. McCoy v. Davis, 38 N.D. 328, 164 N.W. 951.

Furthermore, the points which counsel for the respondents in a general way appears to be raising seem to be well settled in two previous cases decided by this court: Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542, and State ex rel. Kjelden v. Horne, N.D., 98 N.W.2d 150, which held the Act to be constitutional.

The judgments of the district court, in each case granting a peremptory writ of mandamus, are affirmed.

SATHRE, C. J., and BURKE, MORRIS and STRUTZ, JJ., concur.